Barry C. COSGROVE, Plaintiff–Appellant, Cross–Appellee,

v.

Joseph BARTOLOTTA and Mary–Bart, LLC, doing business as Bartolotta's Lake Park Bistro, Defendants–Appellees, Cross–Appellants.

Nos. 97–2903, 97–3023 and 97–3322.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1998.

Decided July 22, 1998.

Maureen A. McGinnity, Michael J. Aprahamian (argued), Foley & Lardner, Milwaukee, WI, for Plaintiff–Appellant in Nos. 97–2903 & 97–3023.

Michael J. Aprahamian (argued), Foley & Lardner, Milwaukee, WI, for Plaintiff–Appellant in No. 97–3322.

Kathryn A. Keppel, Patrick J. Knight (argued), Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Defendants–Appellees.

Before POSNER, Chief Judge, and FLAUM and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

A jury awarded the plaintiff damages of $135,000 in a diversity suit governed by Wisconsin law. The damages were broken down as follows: $117,000 for promissory estoppel, $1,000 for misrepresentation, and $17,000 for unjust enrichment. In response to the defendants' motion under Fed.R.Civ.P. 59(e) to alter or amend the judgment, the judge rendered judgment for the defendants on the promissory estoppel claim on the ground that the plaintiff had failed to prove reliance; but he let the jury's verdict stand with respect to the other claims. Later he denied the plaintiff's motion for costs, on the ground that the plaintiff had failed to recover the minimum amount in controversy fixed in the diversity statute. 28 U.S.C. § 1332(b). Both sides appeal (the plaintiff appeals from the order denying costs as well as from the order amending the judgment). The appeals present issues both of common law and of federal procedure.

■ The principal defendant is Joseph Bartolotta, but his company—Mary-Bart, LLC—is also named as a defendant; and in a diversity case, whenever there is an unconventional party (that is, someone or something other than either a natural person suing in his own rather than a representative capacity, or a business corporation) a jurisdictional warning flag should go up. In the case of a regular corporation, the owners' state of citizenship is irrelevant to whether there is the required complete diversity; but in the case of a partnership, it is crucial. The citizenship of a partnership is the citizenship of the partners, even if they are limited partners, so that if even one of the partners (general or limited) is a citizen of the same state as the plaintiff, the suit cannot be maintained as a diversity suit. *Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Northern*

*Trust Co. v. Bunge Corp.,* 899 F.2d 591, 594 (7th Cir.1990).

■ Mary–Bart is neither a partnership nor a corporation, but a "limited liability company." Wis. Stat. Chapter 183. This animal is like a limited partnership; the principal difference is that it need have no equivalent to a general partner, that is, an owner who has unlimited personal liability for the debts of the firm. See generally Larry E. Ribstein & Robert R. Keatinge, *Ribstein and Keatinge on Limited Liability Companies* (1998). Given the resemblance between an LLC and a limited partnership, and what seems to have crystallized as a principle that members of associations are citizens for diversity purposes unless Congress provides otherwise (as it has with respect to corporations, in 28 U.S.C. § 1332(c)(1)), *Carden v. Arkoma Associates,* supra; *United Steelworkers of America v. R.H. Bouligny, Inc.,* 382 U.S. 145, 152–53, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Indiana Gas Co. v. Home Ins. Co.,* 141 F.3d 314, 317 (7th Cir. 1998), we conclude that the citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members. That does not defeat jurisdiction in this case, however, because Mary–Bart, LLC has only one member—Mr. Bartolotta, who is not a citizen of the same state as the plaintiff.

■ Another threshold issue concerns the scope of our review of the judge's denial of the defendants' motion under Fed.R.Civ.P. Rule 59(e). They had moved for a directed verdict (or as it is now called, "judgment as a matter of law") at the end of the trial, before the jury retired to deliberate. The judge took the motion under advisement and after the jury brought in its verdict he denied the motion and entered judgment for the plaintiff. The defendants filed their Rule 59(e) motion within ten days after the entry of judgment. The ground of the motion was identical to the ground of the defendants' motion for a directed verdict, so that in effect the defendants were asking for reconsideration of the denial of their motion for a directed verdict. The district judge, as we said, granted the motion in part, on the ground that the plaintiff had failed to prove an es-

sential element of his promissory estoppel claim.

Cosgrove argues that the only way the defendants could get such relief was to renew their motion for a directed verdict in the form of a motion under Fed.R.Civ.P. 50(b) for judgment notwithstanding the verdict. That is the standard way, all right. *Lambie v. Tibbits*, 267 F.2d 902, 903 (7th Cir. 1959); *Greer v. United States*, 408 F.2d 631, 635 (6th Cir.1969). And the only grounds for a Rule 59(e) motion, as the plaintiff points out, are newly discovered evidence, an intervening change in the controlling law, and manifest error of law. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C.Cir.1996) (per curiam); *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 91 n. 3 (1st Cir.1993). But the entry of a judgment against the party that was entitled to judgment as a matter of law—the predicate for granting a motion for judgment notwithstanding the verdict—could easily be thought a manifest error. Anyway we cannot believe that any consequences should flow from a mislabeling of the defendants' postjudgment motion, if that is how it should be regarded, as we doubt. The motion was filed within the time limit for a 50(b) motion (which is the same as that for a 59(e) motion—ten days after entry of judgment) and it contained the information required for a 50(b) motion. That was good enough; captions do not control. Cf. *Herzog Contracting Corp. v. McGowen Corp.*, 976 F.2d 1062, 1065 (7th Cir.1992); *Kladis v. Brezek*, 823 F.2d 1014, 1017 (7th Cir.1987); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir.1996).

This brings us to the merits of the appeals. Bartolotta wanted to open a new restaurant in Milwaukee. He asked a family friend— Barry Cosgrove—for help. The help sought was a $100,000 loan from Cosgrove plus Cosgrove's business and legal advice, Cosgrove being an experienced corporate lawyer. Bartolotta promised Cosgrove not only to repay the loan with interest within three years but also to give him a 19 percent ownership interest in the restaurant. Armed with Cosgrove's pledge of the $100,000 loan, Bartolot-

ta was able to obtain the bank financing that he needed for the venture. In reliance on the promise of a share in the ownership of the restaurant, Cosgrove assisted Bartolotta in negotiating the lease of the restaurant premises and the loan from the bank, and it was on Cosgrove's advice that the venture was organized in the form of an LLC. But Cosgrove never actually made the loan and was never given an ownership interest in the restaurant. For after all the arrangements were complete, and though Cosgrove was willing and able to make the loan, Bartolotta obtained alternative financing and cut Cosgrove out of the deal. The restaurant opened and was a success, so the ownership interest that Cosgrove would have gotten had Bartolotta not reneged on his premise has turned out to be worth something; hence this lawsuit.

■ We have stated the facts as favorably to Cosgrove as the record permits, as we must do in deciding whether it was error for the district judge to take the promissory estoppel case away from the jury. Cosgrove's evidence was vigorously contested, but there was enough to enable a reasonable jury to find the facts that we have summarized. It is true that the jury found against Cosgrove on his breach of contract claim, but this was not inconsistent with its finding promissory estoppel. Cosgrove and Bartolotta never worked out the exact terms under which Cosgrove would receive a share in the restaurant, so the jury could reasonably find that there was no contract even if it believed his testimony about the promise made to him and the services that he performed in reliance on the promise. Promissory estoppel is an alternative basis to breach of contract for seeking damages from the breakdown of a relation. If there is a promise of a kind likely to induce a costly change in position by the promisee in reliance on the promise being carried out, and it does induce such a change, he can enforce the promise even though there was no contract. *U.S. Oil Co. v. Midwest Auto Care Services, Inc.*, 150 Wis.2d 80, 440 N.W.2d 825, 828 (1989); *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 817 (7th Cir.1987) (applying Wisconsin law).

■ Buried in our capsule summary of the law of promissory estoppel is an important qualification: the reliance that makes the promise legally enforceable must be induced by a reasonable expectation that the promise will be carried out. A promise that is vague and hedged about with conditions may nevertheless have a sufficient expected value to induce a reasonable person to invest time and effort in trying to maximize the likelihood that the promise will be carried out. But if he does so knowing that he is investing for a chance, rather than relying on a firm promise that a reasonable person would expect to be carried out, he cannot plead promissory estoppel. See *Major Mat Co. v. Monsanto Co.*, 969 F.2d 579, 583 (7th Cir.1992); *Gruen Industries, Inc. v. Biller*, 608 F.2d 274, 280–82 (7th Cir.1979); *Inter–Mountain Threading, Inc. v. Baker Hughes Tubular Services, Inc.*, 812 P.2d 555, 559 (Wyo.1991); *First Security Savings Bank v. Aitken*, 226 Mich.App. 291, 573 N.W.2d 307, 316–18 (1997); *Security Bank & Trust Co. v. Bogard*, 494 N.E.2d 965, 968–69 (Ind.App. 1986). Suppose a father tells his son that he is thinking of promising the son on his next birthday that if he gives up smoking the father will restore him as a beneficiary under his will. In an effort to make sure that he will be able to comply with this condition, the son enrolls in an expensive program for cigarette addicts. His birthday arrives, and the father does not make the promise that the son was hoping for. The son relied, and relied reasonably, on his father's statement, in enrolling in the anti-smoking program; but he was not relying on the carrying out of the promise (not yet made) of being restored as a beneficiary of his father's will, and therefore he has no claim of promissory estoppel. Or suppose a contractor told a subcontractor that it was thinking of hiring him for a job but wouldn't consider him unless the subcontractor had more minority workers in his employ, and the subcontractor goes out and hires some, and, as before, the contractor does not hire him. Again there would be no basis for a claim of promissory estoppel.

The defendants argue that this was such a case. But the jury was entitled to conclude differently. Bartolotta was quite definite in promising Cosgrove an ownership interest in the restaurant, though at first the size of the interest was uncertain. Bartolotta specified no contingencies that might defeat the promise. A reasonable jury could find that Cosgrove invested time and effort in the venture, and pledged to make a $100,000 loan, not because he hoped that this would induce Bartolotta to give him a share in the new company but because he thought he had already been firmly promised a share, contingent only on his honoring his pledge (if called on to do so) and providing business and legal advice as needed—all of which he did or was prepared to do.

■ A more difficult question is whether Cosgrove actually relied on the promise. It is dangerous to take a legal term in its lay sense. To "rely," in the law of promissory estoppel, is not merely to do something in response to the inducement offered by the promise. There must be a cost to the promisee of doing it. *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267, 275 (1965); *Creative Demos, Inc. v. Wal–Mart Stores, Inc.*, 142 F.3d 367, 369 (7th Cir.1998). The pledge of $100,000 was not shown to be a cost to Cosgrove. He never actually made the loan, and there is no evidence that the making of the pledge imposed an out-of-pocket cost, as it would have done if, for example, he had had to pay a capital-gains tax in order to obtain cash needed to make the loan if asked to do so. One could not even be certain that the personal services which Cosgrove rendered to Bartolotta cost him something without knowing what the alternative uses of his time were. If he performed these services in his spare time— time for which he had no valuable professional or even leisure use—the cost to him of performing the services for Bartolotta may have been so slight as not to count as reliance for purposes of promissory estoppel doctrine. But this is hardly plausible; Cosgrove was a professional rendering professional services. And, if nothing else, the pledge put Cosgrove at risk, since he would have been bound—by the very doctrine of promissory estoppel that he invokes—had Bartolotta relied, and since, as the subsequent course of events proved, Bartolotta

was likely to enforce the pledge only if he couldn't get better terms elsewhere, which would be a sign that the venture might be riskier than it had appeared to be originally.

■ Since the judge should not have set aside the jury's award of damages on the claim of promissory estoppel, he should not have denied an award of costs to Cosgrove on the ground (28 U.S.C. § 1332(b)) that Cosgrove had failed to recover the statutory minimum amount in controversy; the damages award for promissory estoppel carried Cosgrove well above that level. But for future reference, we point out that the judge erred in thinking that the denial of costs in a case in which the plaintiff fails to recover at least the statutory minimum is mandatory rather than discretionary, *Dr. Franklin Perkins School v. Freeman*, 741 F.2d 1503, 1525 (7th Cir.1984); *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 8 n. 6 (1st Cir.1995); *Duchesne v. American Airlines, Inc.*, 758 F.2d 27, 30 n. 3 (1st Cir.1985)—the statute is clear on that point. Equally clearly, Cosgrove errs in thinking that the award of costs in such a case is mandatory if the suit was brought in good faith. *Dr. Franklin Perkins School v. Freeman, supra*, 741 F.2d at 1524–25.

The defendants appeal from the part of the judgment that awarded damages for misrepresentation and unjust enrichment. The evidence that Bartolotta misrepresented a present fact—his state of mind when he made the promise—was sufficient to support the jury's verdict. So was the evidence that Cosgrove conferred on Bartolotta a benefit (the pledge of the loan, which was instrumental in enabling Bartolotta to line up bank financing, along with Cosgrove's business and legal advice) for which Cosgrove was entitled to be compensated. When one person confers a benefit on another in circumstances in which the benefactor reasonably believes that he will be paid—that is, when the benefit is not rendered gratuitously, as by an officious intermeddler, or donatively, as by an altruist or friend or relative—then he is entitled to demand the restitution of the market value of the benefit if the recipient refuses to pay. *Ramsey v. Ellis*, 168 Wis.2d 779, 484 N.W.2d 331, 333–34 (1992); *North American Light-*

*ing, Inc. v. Hopkins Mfg. Corp.*, 37 F.3d 1253, 1259 (7th Cir.1994). That describes the present case. The jury could and did find that Cosgrove conferred benefits on Bartolotta in reliance on being compensated by the receipt of an ownership interest in the restaurant.

Where, however, the plaintiff has a good claim for either breach of contract or, as in this case, promissory estoppel, restitution is not really an alternative theory of liability, but an alternative method of computing damages. Should it turn out to be too difficult to value the restaurant business or to determine just how large an ownership interest in it Cosgrove had been promised or even to determine what it cost him in opportunities forgone to render these services, the *value* of the services that he rendered was available as an alternative measure of damages—alternative to either the opportunity or other costs to Cosgrove of the services that he rendered (the reliance measure of damages) or the value of Bartolotta's promise to him (the expectation measure of damages).

■ This assumes that you can get an award of expectation damages on a claim of promissory estoppel in Wisconsin, and apparently you can, see *Kramer v. Alpine Valley Resort, Inc.*, 108 Wis.2d 417, 321 N.W.2d 293, 294 (1982), although we said you couldn't in *Werner v. Xerox Corp.*, 732 F.2d 580, 585 (7th Cir.1984). That is of no importance here; what is important is that alternative and cumulative are not synonyms and that it was triple counting for the jury to give Cosgrove the value of the promised interest in the restaurant *and* the loss that he suffered as a result of Bartolotta's misrepresentation *and* the value of the services that he rendered to Bartolotta. All that Cosgrove sought was an award of compensatory damages, which is to say an award that would put him in the position that he would have occupied had the defendant not committed wrongful acts. Where Cosgrove would be had Bartolotta carried out his promise would be owning a chunk of Bartolotta's business, a chunk the jury valued at $117,000, presumably taking into account the risk of Cosgrove's losing his $100,000 loan should the business sour (the restaurant business is

highly risky). He would not also have been paid $17,000 for services rendered or $1,000 as a kind of "kill fee" (we don't know what other sense to make of this part of the jury's award), for the ownership share was to be the full compensation for his services. So the damages awarded by the jury were excessive, but as the defendants do not object to the verdict on this ground, the point is waived.

To summarize, the judgment is affirmed in part and reversed in part with directions to reinstate the original judgment and award the plaintiff his costs.