213 F.3d 48 (2nd Cir. 2000)
 BURTON HANDELSMAN and VILLAGE GREEN ASSOCIATES LIMITED LIABILITY COMPANY, Plaintiffs-Appellants,
v.
BEDFORD VILLAGE ASSOCIATES LIMITED PARTNERSHIP, BEDFORD VILLAGE ASSOCIATES LIMITED LIABILITY COMPANY, and MARK J. KRONMAN, Defendants-Appellees.
 Docket Nos. 98-9434(L), 99-7948(CON)
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: February 24, 2000
Decided: May 17, 2000
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., Judge) dismissing plaintiffs' complaint and finding for defendants on their counterclaims, and from a post-judgment order dismissing all parties except plaintiff Handelsman and defendant Kronman in their individual capacities. We conclude that the district court lacked diversity jurisdiction in this case and that such jurisdiction is not salvageable.
 Vacated and remanded.
 AMOS ALTER, Parker Chapin Flattau & Klimpl, LLP, New York, NY, for plaintiffs-appellants.
 RICHARD M. RESNICK, Mandel & Resnick PC, New York, NY (Edward M. Shapiro and Richard M. Garbarini, on the brief), for defendants-appellees.
 Before: STRAUB and SOTOMAYOR, Circuit Judges, and HURD,*. District Judge.
 SOTOMAYOR, Circuit Judge:
 
 
 1
 Plaintiff-appellants Burton Handelsman ("Handelsman") and Village Green Associates Limited Liability Company ("Village Green") appeal from a judgment of the United States District Court for the Southern District of New York (John S. Martin, Jr., Judge) dismissing their complaint and finding in favor of defendants-appellees Mark J. Kronman ("Kronman"), Bedford Village Associates Limited Partnership ("Bedford Partnership"), and Bedford Village Associates Limited Liability Company ("Bedford LLC") on their counterclaims. Plaintiffs also appeal from a post-judgment order attempting to salvage diversity jurisdiction by dismissing all parties except Handelsman and Kronman in their individual capacities.
 
 
 2
 For the reasons discussed below, we conclude that jurisdiction in this case cannot lie. We therefore vacate the district court's judgment and post-judgment order and remand to the district court with instructions to remand the case to the state court from which it was originally removed.
 
 BACKGROUND
 
 3
 This case arises out of a November 10, 1995 settlement agreement ("Settlement Agreement") that resolved a number of controversies involving 17 different real estate partnerships containing more than 200 partners. The Settlement Agreement provided, inter alia, for the conversion of each of the 17 general partner entities (limited partnerships, each with Handelsman as general partner) into limited liability companies ("LLCs") to be co-managed by Handelsman and either Mark Kronman or Richard Segal. The Settlement Agreement also specified a procedure by which Handelsman could offer to purchase individual partnership properties at a set price, and the Partner Representative would have the right of first refusal on behalf of the limited partners. By matching Handelsman's offer, the Partner Representative could exercise the limited partners' right of first refusal and thereby extinguish Handelsman's interest in the subject property.
 
 
 4
 On December 23, 1996, Handelsman made an offer to purchase a particular property from Bedford Partnership for $2,150,000, pursuant to the procedure set out in the Settlement Agreement. At that point, Bedford Partnership's Partner Representative-Mark Kronman-sought to match Handelsman's offer and buy out Handelsman's interest in the subject property. After negotiating several aspects of the draft contract of sale with Handelsman's attorney, Kronman signed a February 4, 1997 contract of sale ("February Contract") and returned it to Handelsman for his signature. Handelsman never executed the February Contract, however, claiming that Kronman's counteroffer failed to match the terms of his original offer.
 
 
 5
 On August 25, 1997, Handelsman filed suit against Kronman and Bedford LLC[1] in New York State Supreme Court, New York County. Defendants Kronman and Bedford LLC thereafter removed the action to federal court pursuant to 28 U.S.C. §1441.[2] On November 6, 1997, Handelsman filed an amended complaint in federal district court, adding Village Green (a Handelsman-controlled entity) as co-plaintiff, and naming Kronman, Bedford LLC, and Bedford Partnership as defendants.
 
 
 6
 Plaintiffs' amended complaint sought a declaratory judgment regarding the rights of the parties, an injunction directing Bedford Partnership to transfer title to the subject property to plaintiffs, attorneys fees, and costs. On November 20, 1997, defendants Kronman, Bedford LLC, and Bedford Partnership answered and filed counterclaims. In their counterclaims, defendants sought an injunction directing Handelsman to execute the February Contract, removal of Handelsman as co-manager of all 17 partnerships, damages for Handelsman's alleged breach of fiduciary duty, punitive damages, attorneys fees, and costs.
 
 
 7
 Following a bench trial, the district court entered judgment on September 23, 1998, directing Handelsman to execute the February Contract, removing Handelsman as co-managing partner of the 17 partnerships, and awarding attorneys fees and costs to defendants. Plaintiffs filed a timely notice of appeal on October 22, 1998, appealing on the merits of the district court's decision.
 
 
 8
 While their appeal on the merits was pending before this Court, plaintiffs moved to vacate the judgment for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 60(b), claiming a lack of complete diversity between the parties. The parties thereafter entered into a stipulation dismissing the appeal on the merits with leave to reinstate it following the district court's consideration of plaintiffs' motion to vacate. On July 29, 1999, the district court issued an order recognizing that diversity jurisdiction was lacking among the parties named in the amended complaint. In an effort to salvage both jurisdiction and the judgment, the district court stated its intent to dismiss all non-diverse parties, including Kronman (in his capacity as Partner Representative) as well as the other partnership and LLC entities, and to retain only Handelsman and Kronman (in his individual capacity). Finding that diversity jurisdiction was salvageable, the district court denied plaintiffs' motion to vacate.
 
 
 9
 Pursuant to the parties' stipulation, plaintiffs now reinstate their first appeal on the merits. Plaintiffs also appeal from the district court's July 29, 1999 order denying their motion to vacate the judgment and to remand the case to state court for lack of subject matter jurisdiction. We hold that subject matter jurisdiction does not exist for this action and thus decline to address the merits of the underlying dispute.
 
 DISCUSSION
 
 10
 When this action was removed to federal court, the purported basis for subject matter jurisdiction was 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires that "all of the adverse parties in a suit . . . be completely diverse with regard to citizenship." E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998) (citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267 (1806)); see also Wisconsin Dep't of Corrections v. Schact, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens of the same State.") (internal quotation marks omitted).
 
 
 11
 When the district court originally entered its judgment, however, complete diversity was lacking as between all plaintiffs and defendants. Plaintiff Handelsman is a citizen of Florida and co-plaintiff Village Green (a Handelsman entity) is, for diversity purposes, also a citizen of Florida. See Cosgrove v. Bartolotto, 150 F.3d 729, 731 (7th Cir. 1998) (stating that, for purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership). Similarly, defendants Bedford Partnership and Bedford LLC are, for diversity purposes, citizens of Florida because both entities have Florida members. See, e.g., Carden v. Arkoma Assocs., 494 U.S. 185, 195-96 (1990) (stating that, for purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners); Cosgrove, 150 F.3d at 731 (same). Finally, while Kronman (in his individual capacity) is a citizen of New York, Kronman (in his capacity as Partner Representative) is, for diversity purposes, deemed to have the citizenship of all the limited partners he represents, including those from Florida. See Squibb, 160 F.3d at 931 (noting "that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists") (quoting Northern Trust Co. v. Bunge Corp., 899 F.2d 591, 594 (7th Cir. 1990)). Thus, diversity was lacking under § 1332 because plaintiffs Handelsman and Village Green, and defendants Bedford Partnership, Bedford LLC, and Kronman (in his capacity as Partner Representative) are all citizens of Florida.
 
 
 12
 In its July 29, 1999 order, the district court sought to dismiss from the lawsuit all non-diverse parties, leaving only Handelsman and Kronman in their individual capacities. See generally Fed. R. Civ. P. 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832, 836 (1989) (noting that "it is well-settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered" and that "requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention"). The district court reasoned that:
 
 
 13
 Kronman was a party to the Settlement Agreement both individually and as Partner Representative. As a party to the agreement, he had a right to sue in his own name to enforce [Handelman's] obligations and the agreement specifically recognized the right of any party to obtain injunctive relief for a breach of the agreement. Since Kronman and Handelsman were citizens of different states[,] . . . [Kronman's] claim against Handelsman came within this Court's diversity jurisdiction.
 
 
 14
 The district court concluded, moreover, that the dismissal of the remaining parties, including Kronman (in his capacity as Partner Representative), would not violate Fed. R. Civ. P. 19(b).[3] The district court explained:
 
 
 15
 The limited partners will not be prejudiced since they agreed in the Settlement Agreement that Kronman could represent their interests and they have already been paid their share of the sales price. Rather than being prejudiced by the case proceeding in their absence, the limited partners would be prejudiced if they were joined as parties and the Court's judgment was vacated, since they would be required to repay the money they have received. . . .
 
 
 16
 . . . .
 
 
 17
 . . . In sum, no one will be prejudiced by dismissing the partnership's and Kronman's claim as Partner Representative and allowing this case to proceed with only Kronman in his individual capacity as counterclaim-plaintiff.
 
 
 18
 Reviewing this matter on appeal, we note as an initial matter that the district court's July 29, 1999 order neglected to do what it purported to do, i.e., it failed to dismiss all non-diverse parties from the litigation. Assuming the district court's order was otherwise proper, this Court could exercise its "power to dismiss [on appeal] a dispensable nondiverse party from a suit under Rule 21 of the Federal Rules of Civil Procedure in order to salvage jurisdiction." Squibb, 160 F.3d at 935 (citing Newman-Green, 490 U.S. at 832-33); see also[4] James Wm. Moore et al., Moore's Federal Practice § 21.02[3] (3d ed. 1999) (explaining that, under Rule 21, "[p]arties may be added or dropped at any time, including after trial, after notice of appeal has been filed, or even on appeal") (emphasis added). In the instant case, however, we conclude that any attempt to restructure the lawsuit to salvage both diversity jurisdiction and the judgment would be futile.
 
 
 19
 We find that the approach taken in the district court's July 29, 1999 order is untenable for several reasons. First, the district court erroneously concluded that Kronman (in his individual capacity) had standing to request specific performance of the February Contract for Handelsman's alleged breach of section 3(e) of the Settlement Agreement. In reaching this conclusion, the district court apparently relied on the language in section 25(b) of the Settlement Agreement, which states that:
 
 
 20
 The parties hereto recognize that they may be irreparably harmed and damaged if this Agreement is not specifically enforced. If any dispute shall arise concerning any of the terms of this Agreement or if there is a breach[,] . . . an injunction . . . may be issued . . . . Such injunction shall be enforceable in a court of competent jurisdiction by a decree of specific performance. Such remedy shall, however, be cumulative and not exclusive and shall be in addition to any other remedies which the Limited Partners, the Partnerships, Handelsman and a New General Partner, as the case may be, may have.
 
 
 21
 Although section 25(b) provides for specific performance as a remedy where a party's rights under the Settlement Agreement are violated, section 25(b) says nothing about who may exercise such rights in the event of a breach. We must therefore look to the provision that was allegedly breached-here, section 3(e)-to determine who is vested with the right to sue for specific performance.
 
 
 22
 Section 3(e) provides in relevant part that:
 
 
 23
 Handelsman [may] cause a sale of the Partnership property by giving written notice ("Handelsman Offer Notice") to the Limited Partners by notice to the Partner Representative, of an Offer. . . . The Handelsman Offer Notice shall grant the Limited Partners a right of first refusal at the same price and upon the same terms as the Offer. The Partner Representatives shall notify Handelsman in writing . . . Failure by the Partner Representatives to give such notice of acceptance or rejection shall be deemed a rejection of the Handelsman Offer.
 
 
 24
 (emphasis added). Based on this explicit language, we conclude that any rights under section 3(e) of the Settlement Agreement belong to the limited partners of Bedford Partnership as a group and not to Kronman individually. 4 This reading of section 3(e) also finds support in Kronman's December 26, 1996 letter to the limited partners of Bedford Partnership, in which Kronman himself states:
 
 
 25
 As you know, for over a year now I have been co-manager of the LLC which is the general partner of this partnership together with Burt Handelsman. In accordance with the terms of the settlement agreement, each of us has a right to match any offer made to purchase the property. My right exists on behalf of the limited partners and Burt's right is personal to him.
 
 
 26
 (emphasis added). Thus, because Kronman has no individual rights under section 3(e) of the Settlement Agreement, he has no standing to sue in his individual capacity for specific performance based on Handelsman's alleged violation of that section. See generally Warth v. Seldin, 422 U.S. 490, 500-01 (1975) (explaining that the existence of a legal right held by the plaintiff is a predicate for standing).
 
 
 27
 Second, the district court also erred insofar as it treated the limited partners (represented by Kronman as Partner Representative) as dispensable parties to the litigation. In this regard, we are not persuaded as a matter of law that Kronman in his individual capacity could act as a surrogate for the limited partners' interests. Under New York law, "a partnership cause of action belongs only to the partnership itself or the partners jointly, and [] an individual member of the partnership may only sue and recover on a partnership obligation on the partnership's behalf." Gmerek v. Scrivner, Inc., 634 N.Y.S.2d 299, 299 (4th Dep't 1995) (citing Stevens v. St. Joseph's Hosp., 381 N.Y.S.2d 927, 928 (4th Dep't 1976)); see also D'Ippolito v. Cities Serv. Co., 374 F.2d 643, 647 (2d Cir. 1967) ("[A] partner may still sue on 'a debt due the partnership' but 'must bring the action on behalf of and for the benefit of the partnership and may not recover on such an obligation individually.") (citing Kirschbaum v. Merchants Bank, 71 N.Y.S.2d 79, 80 (1st Dep't 1947)); Poley v. Sony Music Entertainment, Inc., 636 N.Y.S.2d 10, 10 (1st Dep't 1995) (holding that a partner lacked standing to prosecute claim for breach of contract in his individual capacity); Shea v. Hambro Am. Inc., 606 N.Y.S.2d 198,199 (1st Dep't 1994) (holding that a partner lacked standing to bring individual claims to recover debts allegedly owed to partnership). Thus, the distinction between a suit by Kronman as Partner Representative and a suit by Kronman in his individual capacity is not merely semantic, but substantive. Cf. Squibb, 160 F.3d at 937 n.26 ("The distinction between a suit against a representative and a suit against an individual-a judgment for or against whom binds others by contract-is not merely formal.").
 
 
 28
 Finally, the district court's finding that "[t]he limited partners will not be prejudiced since they...have already been paid their share of the sales price," did not reflect the basic nature of the transaction contemplated in section 3(e) of the Settlement Agreement and the February Contract. The limited partners sought to pay Handelsman-not the other way around-in order to buy out his interest in the subject property held by Bedford Partnership. Because the judgment in this case would necessarily determine whether or not the limited partners must pay money to Handelsman, and because the limited partners' interests may not necessarily coincide with Kronman's individual interests, we cannot agree that the limited partners (i.e., Kronman in his capacity as Partner Representative) are dispensable parties under Rule 19(b). See generally Fed. R. Civ. P. 19(b) (explaining that a party's dispensability depends on whether, "in equity and good conscience," the action should proceed in the party's absence).
 
 
 29
 Of course, if Kronman were to remain a party in his capacity as Partner Representative, he would be deemed a citizen of Florida, and would be nondiverse vis-a-vis Handelsman, who is also a citizen of Florida. See Squibb, 160 F.3d at 931; Northern Trust, 899 F.2d at 594. Kronman's presence in the lawsuit as Partner Representative would therefore destroy diversity and deprive the district court of subject matter jurisdiction. See Wisconsin Dep't of Corrections, 524 U.S. at 388 (stating that diversity jurisdiction is lacking unless "there is no plaintiff and no defendant who are citizens of the same State"); Squibb, 160 F.3d at 930.
 
 
 30
 In light of these facts, we conclude that the dropping or adding of parties to this lawsuit would be futile because (1) Kronman (in his individual capacity) would not have standing to file the necessary claims against Handelsman; and (2) although Kronman (in his capacity as Partner Representative) would have standing to bring the claims necessary to support the judgment, his presence in a representative capacity would destroy diversity jurisdiction. In essence, no party can have standing as a defendant-counterclaim-plaintiff in this case without also destroying the district court's diversity jurisdiction.
 
 CONCLUSION
 
 31
 For the foregoing reasons, we hold that the district court lacked subject matter jurisdiction in this case. We therefore vacate the district court's judgment and post-judgment order and remand to the district court with instructions to remand the case to the New York State Supreme Court, New York County.
 
 
 
 Notes:
 
 
 *
 The Honorable David N. Hurd, of the United States District Court for the Northern District of New York, sitting by designation.
 
 
 [1]
 At that time, Handelsman erroneously believed that Bedford LLC was the owner of the disputed property when, in fact, Bedford Partnership was the owner.
 
 
 [2]
 Because Kronman was a citizen of New York, he was not entitled to remove to federal court. See 28 U.S.C. § 1441(b) ("Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."). Handelsman waived his right to object to this procedural defect, however, by failing to raise the objection within 30 days of removal. See Hamilton v. Aetna Life & Cas. Co., 5 F.3d 642, 643 (2d Cir. 1993) (explaining that, under 28 U.S.C. § 1447(c), "all motions for remand-except those based on lack of subject matter jurisdiction-must be made within 30 days after removal or they are waived").
 
 
 [3]
 Fed. R. Civ. P. 19(b) provides that, where a necessary party cannot be made a party to a lawsuit, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."
 
 
 [4]
 While we recognize that Kronman signed the Settlement Agreement both "individually and as Partner Representative," we express no opinion here as to whether other provisions of the Settlement Agreement may endow Kronman with individual rights.