SONOMA FALLS DEVELOPERS, LLC, Sonoma Falls Lender, LLC, and Sonoma Falls Manager, LLC, Plaintiffs,

v.

NEVADA GOLD & CASINOS, INC., the Dry Creek Casino, LCC, Gene Keluche, Wintun Lodge, LLC, James Doolan, Pathways Consulting, Jenkins Entertainment Group, LLC, and Does 1–10, inclusive, Defendants.

No. C–03–906 VRW.

United States District Court,
N.D. California.

July 16, 2003.

I

The instant action, along with related case *Sonoma Falls Developer LLC et al v. The Dry Creek Rancheria Band of Pomo Indians,* Case No C–01–4125–VRW, arises out of a dispute over contracts awarded by the Dry Creek Rancheria Band of Pomo Indians (the Tribe) to develop an Indian gaming casino. Because removal must be determined based on the plaintiffs' complaint at the time of removal, the following factual summary comes from the removed complaint unless otherwise noted. See *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.1998).

Plaintiffs Sonoma Falls Developer LLC, Sonoma Falls Manager LLC and Sonoma Falls Lender LLC (collectively, Sonoma Falls) allege that defendants engaged in unfair competition under California law and intentionally interfered with their contractual relations with the Tribe. In summer 1999, Advent Communications & Entertainment Co., LLC (ACE) entered into several exclusive agreements with the Tribe to develop a gaming casino. Compl. (Doc. # 1, Exh. A), ¶ 14. The rights under these contracts were later assigned to Sonoma Falls, which entered into further agreements with the Tribe concerning casino development in 2000. Id., ¶¶ 15–16.

Defendants became aware of the Tribe's agreements with Sonoma Falls when they approached the Tribe, seeking to assist in a casino development project in 1998. Id., ¶ 17. Even after defendants were informed that the Tribe was already working with Sonoma Falls, they continued to contact the Tribe to offer development assistance. Id., ¶ 19.

In February 2001, defendants met again with the Tribe, presenting a casino development proposal that would have excluded Sonoma Falls entirely. Id., ¶ 23. To develop their proposal, defendants knowingly used materials prepared for, and paid for

ORDER

WALKER, District Judge.

Plaintiffs move to remand this case to San Francisco superior court. Doc # 18. Defendants oppose remand. Doc # 20. The court finds this matter suitable for determination without oral argument and therefore VACATED the June 12, 2003, hearing set for this matter. See Civil LR 7–1(b). For the reasons set forth below, the court GRANTS plaintiffs' motion to remand (Doc # 18).

by, Sonoma Falls. Id. Between late March and early April 2001, Sonoma Falls contacted defendants, informing them that their "efforts to negotiate an agreement to build a casino with the Tribe constituted an interference with the already existing agreements between Sonoma Falls and the Tribe." Id., ¶ 24.

In spite of these communications, defendants continued to contact the Tribe. Id., ¶ 25. In August 2001, defendants entered into an agreement to fund, develop and construct a casino for the Tribe. Id., ¶ 27. This agreement constituted a breach of the Sonoma Falls's exclusive agreements with the Tribe. Id., ¶ 30.

## II

■ Removal to federal court is governed by 28 U.S.C. § 1441. Suits filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). An action may be remanded to state court, among other reasons, if the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removal statute is strictly construed against removal and any doubt must be resolved in favor of remand. *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir.1988). As the party invoking federal court jurisdiction, defendants bear the burden of proving that removal was proper. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988).

## III

In their notice of removal, defendants contend that the court possesses diversity jurisdiction under 28 U.S.C. § 1332. The parties do not dispute that the amount in controversy exceeds the jurisdictional threshold. See Compl. (Doc. # 1, Exh. A) at 9 (estimating damages to exceed $200 million); Notice of Removal (Doc. # 1), ¶ 3 (noting same). Accordingly, the sole question presented is whether there is complete diversity among the parties.

Defendants present two arguments why complete diversity exists: (1) the defendants that purportedly share Nevada citizenship with Sonoma Falls—Nevada Gold and Dry Creek Casino—are actually citizens of other states, and (2) alternatively, even if these defendants are Nevada citizens, they have been fraudulently joined.

## A

■ Defendants' first basis for diversity jurisdiction turns on whether limited liability companies (LLCs) are to be treated, for purposes of determining citizenship under 28 U.S.C. § 1332, as corporations or as unincorporated entities.

In the complaint, the Sonoma Falls entities are alleged to be LLCs organized under Delaware law. Compl. (Doc. # 1, Exh. A), ¶ 5. Plaintiffs argue that because ACE, one of Sonoma Falls's constituent members, is a Nevada corporation, each of the Sonoma Falls LLCs is accordingly a Nevada citizen for purposes of diversity.

Because defendant Nevada Gold is alleged to be a Nevada corporation, plaintiffs contend that the suit as currently configured lacks complete diversity, making removal improper. (The parties also dispute the treatment of defendant Dry Creek, alleged to be an LLC owned in part by Nevada Gold. Because of the presence of Nevada Gold, however, the court need not focus on Dry Creek.)

In recent years, LLCs have quickly become a popular form of organization. Prior to 1990, only two states provided for LLCs, but by the end of 1996, all fifty states recognized LLCs. See Susan Pace Hamill, *The Limited Liability Company: A Catalyst Exposing the Corporate Integration Question*, 95 Mich. LR 393, 403–05 (1996).

Due perhaps to the relative youth of LLCs as a recognized form of business organization, the Ninth Circuit has yet expressly to address whether an LLC takes on the citizenship of its membership for purposes of ascertaining diversity jurisdiction. Circuit courts considering the subject have uniformly concluded that LLCs are not to be treated as corporations and instead share the citizenship of its members. See *Marseilles Hydro Power, LLC v. Marseilles Land and Water Co.*, 299 F.3d 643, 652 (7th Cir.2002) (explaining that "the relevant citizenship [of an LLC] for diversity purposes is that of the members, not of the company"); *Handelsman v. Bedford Village Assocs., Ltd. Partnership*, 213 F.3d 48, 51–52 (2d Cir.2000) (recognizing that "a limited liability company has the citizenship of its membership"); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir.1998) ("[M]embers of associations are citizens for diversity purposes unless Congress provides otherwise * * * as it has with respect to corporations."); see also *Homfeld II, LLC v. Comair Holdings, Inc.*, 53 Fed.Appx. 731 (6th Cir.2002) (unpublished disposition holding that "a limited liability company is not treated as a corporation and has the citizenship of its members").

At least one district court within the Ninth Circuit has also recognized that an LLC takes on the citizenship of its constituent members for purposes of ascertaining whether complete diversity exists among the parties. See *TPS Utilicom*, 223 F Supp 2d at 1101 (C.D.Cal.2002) ("A limited liability company * * * is treated like a partnership for the purpose of establishing citizenship under diversity jurisdiction.").

Defendants urge the court to come to the opposite conclusion because an LLC "is more analogous to a corporation." Defs. Opp. (Doc. # 24) at 3. Distinguishing LLCs from partnerships and rendering them more akin to corporations, defen-

dants contend, are their status as "separate legal entit[ies]" and the lack of personal liability on the part of members. Id.

The Supreme Court has expressly foreclosed defendants' arguments. It is axiomatic that "diversity jurisdiction in a suit by or against [an artificial] entity depends on the citizenship of 'all the members' * * *." *CT Carden v. Arkoma Assocs.*, 494 U.S. 185, 195, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (holding that limited partnerships are citizens of its membership). The sole exception to this rule, of course, is a corporation. See *Louisville, C & CR Co. v. Letson*, 2 How. 497, 558, 11 L.Ed. 353 (1844) (holding that a corporation is "capable of being treated as a citizen of [the state which created it], as much as a natural person").

Practical similarities with the corporate form of organization, including those raised by defendants, are immaterial. See *Carden*, 494 U.S. at 196–97, 110 S.Ct. 1015 (discussing *Steelworkers v. RH Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)). So too is the "separate legal status" enjoyed by LLCs. See *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (while a "limited partnership association" had "some of the characteristics of a corporation" and considered to be a "citizen" by the state creating it, it was not a "citizen" under the jurisdictional rule established for corporations); see also *Carden*, 494 U.S. at 189, 110 S.Ct. 1015 ("While the rule regarding the treatment of corporations as 'citizens' has become firmly established, we have * * * just as firmly resisted extending that treatment to other entities.").

In *Bouligny*, the Supreme Court recognized that although there may be "no common sense reason for treating [certain unincorporated entities] differently from a corporation", whether it "ought to be as-

similated to the status of corporations for diversity purposes is properly a matter for legislative consideration which cannot adequately or appropriate be dealt with by" a judicial avenue. 382 U.S. at 146, 153, 86 S.Ct. 272. "In other words, having entered the field of diversity policy with regard to artificial entities once * * * in *Letson,* [the Supreme Court has] left further adjustments to be made by Congress." *Carden,* 494 U.S. at 196, 110 S.Ct. 1015. In 1958, Congress altered the rule provided by *Letson* by amending 28 U.S.C. § 1332 to recognize that a corporation shall be deemed a citizen not only of the state of its incorporation but also "of the State where it has its principal place of business." 28 U.S.C. § 1332(c).

Although *Carden* dealt with a limited partnership, it is clear from the Court's analysis that it was not concerned with the practical features of the particular form of organization at issue, such as the liability of its members. Instead, courts are to apply the traditional rule concerning unincorporated entities—and refrain from according them corporate treatment—absent express legislative pronouncement:

> [The Court's decision in *Carden*] does not so much disregard the policy of accommodating our diversity jurisdiction to the changing realities of commercial organization, as it honors the more important policy of leaving that to the people's elected representatives. * * * The 50 States have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control. Which of them is entitled to be considered a citizen for diversity purposes, and which of their members' citizenship is to be consulted, are questions more readily resolved by legislative prescription than by legal reasoning, and questions whose complexity is particularly unwelcome at

the threshold stage of determining whether a court has jurisdiction. We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision.

494 U.S. at 197, 110 S.Ct. 1015. Likewise, the court adheres to the Supreme Court's decision and declines defendants' invitation to treat LLCs differently from other unincorporated artificial entities. Because ACE is a member of the Sonoma Falls LLCs, plaintiffs are considered to be Nevada citizens for purposes of diversity jurisdiction. Because defendant Nevada Gold is also a Nevada citizen, complete diversity is lacking.

**B**

In the alternative, defendants urge the court to conclude that Nevada Gold and Dry Creek Casino, an LLC mostly owned by Nevada Gold, are fraudulently joined.

■ To determine whether complete diversity exists, the court may disregard a non-diverse defendant if it concludes that the defendant has been fraudulently joined, meaning that "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.,* 236 F.3d 1061, 1067 (9th Cir.2001).

■ Defendants note that the court, in the related action against the Tribe, has already ruled that two of the five contracts at issue are void because they lacked approval by the National Indian Gaming Commission (NIGC). See 12/26/02 Order (01–4125–VRW: Doc. # 64). Sonoma Falls does not contest this assertion but notes that in the same order, the court expressly upheld the validity of at least one of the three remaining agreements despite the absence of NIGC approval. Pls. Repl. (Doc. # 21) at 4–5. Thus, Sono-

ma Falls argues that there would appear to be at least some possibility of recovery against Nevada Gold and Dry Creek Casino.

In an attempt to render these other agreements void, defendants turn to Cal. Civil Code § 1642, which provides that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Defendants argue that because four of the five contracts at issue were executed on the same day and all of them relate to the same subject matter, the court should construe all five agreements to be a single contract, rendered void because two of the constituent agreements have been declared void for want of NIGC approval.

Under California law, "[w]hether Civil Code section 1642 applies in a particular case is a question of fact for resolution by the trial court." *Brookwood v. Bank of America*, 45 Cal.App.4th 1667, 53 Cal. Rptr.2d 515, 520 (1996); *Pilcher v. Wheeler*, 2 Cal.App.4th 352, 3 Cal.Rptr.2d 533, 535 (1992) ("[I]t is a question of fact whether multiple contracts are intended to be elements of a single transaction under section 1642."). As Sonoma Falls points out, it is applicable only if there is ambiguity concerning the interpretation of a contract. See Cal. Civ. Code § 1637 (noting that the proceeding rules, including section 1642, are to be applied "[f]or the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful"). Defendants have proffered nothing to indicate that interpretation of these agreements would be "otherwise doubtful" unless section 1642 were to be applied. Accordingly, they have failed to meet their burden to demonstrate that Nevada Gold and Dry Creek Casino are sham defendants.

█ In addition, defendants concede that even if part of an agreement is void, the entire contract is not automatically

rendered invalid as well. See *Keene v. Harling*, 61 Cal.2d 318, 38 Cal.Rptr. 513, 515, 392 P.2d 273 (1964) ("Whether a contract is * * * separable depends upon its language and subject-matter, and this question is one of construction to be determined by the court according to the intention of the parties."); *Malmstedt v. Stillwell*, 110 Cal.App. 393, 294 P. 41, 42 (1930) (explaining that even if multiple contracts are to be "construed together" pursuant to section 1642, "it does not follow that for all purposes they constitute one contract").

Defendants do not address the issue of severability. But at the removal stage, the burden lies not with the plaintiffs to demonstrate the severability of the five contracts assuming it is proper to construe them as a single agreement. Instead, it is defendants' burden to establish federal court jurisdiction and to demonstrate the absence of any possibility of recovery against allegedly sham defendants. See *Emrich* 846 F.2d at 1195.

Because defendants have failed to meet this burden with respect to Nevada Gold and Dry Creek Casino, the court declines to conclude that these defendants are fraudulently joined. Accordingly, their citizenship may not be disregarded for purposes of diversity jurisdiction.

## C

█ In passing, defendants urge the court to exercise supplemental jurisdiction over plaintiffs' claims. 28 U.S.C. § 1367 provides that in general, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy * * *." By definition and its own name, however, supplemental jurisdiction does not provide an independent basis

for removal. Defendants have failed in their notice of removal to identify a legitimate basis for original jurisdiction over any claim in the removed complaint.

## IV

The Tribe also moves for leave to file an amicus brief concerning the motion to remand. See Docs ## 29,36,39. District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has "unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Cobell v. Norton*, 246 F Supp 2d 59, 62 (D.D.C.2003) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir.1997)).

While the Tribe has not been named a party in this action, the court finds it appropriate to consider the Tribe's position because of its involvement in the events leading to this case and its interest in the contracts at issue. Accordingly, the court in its discretion GRANTS the Tribe's motion for leave to file its amicus brief on Sonoma Falls's motion to remand (Docs. ## 29, 36, 39).

### A

In its amicus brief, the Tribe argues that, under 28 U.S.C. § 1331, the court possesses federal question jurisdiction over the instant action. The Tribe contends that federal regulation of Indian gaming and property completely preempts Sonoma Falls's state law claims.

The court is unable to consider whether federal question jurisdiction might have provided a valid basis for removal because none of the defendants raised this issue in their notice of removal, which predicates removal jurisdiction solely on complete diversity.

The Tribe argues that the court should allow defendants to amend their removal notice to allege federal question jurisdiction. Notably, defendants do not join in the Tribe's request or otherwise seek to amend their own notice of removal to allege the additional ground of federal question jurisdiction. Putting aside for a moment the highly questionable proposition that a non-party such as the Tribe may act on behalf of defendants in removal matters, see *Parrino v. FHP, Inc.*, 146 F.3d 699, 703 (9th Cir.1998) (removal requires express joinder by all defendants), the court is without discretion to permit amendment for the purpose of asserting an entirely new basis of subject matter jurisdiction.

It is well-settled that defendants must state the basis for removal jurisdiction in the notice of removal, which must be filed within thirty days after service of the complaint. See *O'Halloran v. University of Wash.*, 856 F.2d 1375, 1381 (9th Cir.1988); 28 U.S.C. § 1446. The statutory provisions for removal, including the thirty-day time limit, are to be "strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 123 S.Ct. 366, 369, 154 L.Ed.2d 368 (2002). As removal occurred on February 28, 2003, defendants are well past the thirty-day period for asserting grounds for removal jurisdiction.

█ After the statutorily prescribed thirty-day period has elapsed, the court, in its discretion, may permit amendment to correct a defective allegation of subject matter jurisdiction. But defendants may not amend their notice of removal "to state alternative bases for removal jurisdiction". *ARCO Environmental Remediation, LLC v. Department of Health & Environmental Quality*, 213 F.3d 1108, 1117 (9th Cir. 2000); *O'Halloran*, 856 F.2d at 1381 ("The petition cannot be amended to add a separate basis for removal jurisdiction after the thirty day period.").

## B

 The Tribe attempts to circumvent the well-established law on this subject by arguing that the notice of removal contains facts that provide a basis for federal question jurisdiction. Thus, the Tribe argues, amendment at this point would merely correct a "defective allegation of jurisdiction" permissible under 28 U.S.C. § 1653. The only factual statement relied upon by the Tribe, however, is the allegation that plaintiffs "entered into numerous agreements with [the Tribe] for the development of both an 'interim' and a 'permanent' casino facility on the [T]ribe's land." Notice of Removal (Doc. # 1), ¶ 8. This single statement, contained in a section described as "background and facts", cannot reasonably be construed to have raised facts alleging federal question jurisdiction. Neither the complaint nor the notice of removal mentions the Indian Gaming Regulatory Act of 1988, codified at 25 U.S.C. §§ 2700 et seq., which purportedly preempts Sonoma Falls's claims in their entirety or even alleges that the Tribe is federally recognized. Hence, no federal cause of action appears on the face of plaintiffs' complaint. Nor is one raised by the single sentence of the removal notice to which the Tribe refers.

By contrast, diversity jurisdiction is alleged in the notice of removal in clear and explicit terms. The removal notice is captioned as "removal of action under 28 U.S.C. § 1441(b) (diversity)." See Notice of Removal (Doc. # 1), at 1. It states at the outset that "[t]his action is a civil action of which this Court has original jurisdiction under 28 U.S.C. Sec. 1332 * * *." Id., ¶ 3. The notice proceeds to a lengthy exposition of fraudulent joinder and the diversity of citizenship among the parties, both of which are grounds purported to supply diversity jurisdiction. Id., ¶¶ 6–19. Because the notice of removal does not assert federal question subject matter jurisdiction under 28 U.S.C. § 1331, it is ineligible for amendment on the ground of "clarification". See *TPS Utilicom Servs., Inc. v. AT & T Corp.*, 223 F.Supp.2d 1089, 1095 n. 2 (C.D.Cal.2002) (a district court "abuses its discretion to permit a removing defendant to amend a notice of removal to raise additional bases for subject matter jurisdiction after expiration of the thirty day removal period provided at 28 U.S.C. § 1446(b)") (citing *ARCO*, 213 F.3d at 1117, and *O'Halloran*, 856 F.2d at 1381); 14A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3733 at 358–61 (3d ed. 1998) ("The notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice. * * * Completely new grounds for removal may not be added and missing allegations may not be furnished.").

## V

Although defendants have not established the court's subject matter jurisdiction based on their notice of removal, the court notes the possibility of future federal jurisdiction over the instant claims. As currently pled, the related actions appear to involve separate though connected controversies and different defendants. Nevertheless, if able counsel were to demonstrate the need to join defendants (or allow their intervention) in the federal action between Sonoma Falls and the Tribe, as appropriate parties to Sonoma Falls's claim for declaratory judgment concerning their contracts with the Tribe, the court might then be able to exercise jurisdiction over the instant claims.

## VI

 Nevertheless, the court concludes that removal was improper. Accordingly, Sonoma Falls's motion to remand is GRANTED (Doc # 18).

Sonoma Falls also requests attorney fees in connection with its motion to remand. Sonoma Falls explains that prior to removal, it had provided defendants, in response to a specific inquiry, with legal authority indicating that federal courts lacked subject matter jurisdiction over the instant action. See Balabanian Decl. (Doc. # 18, Exh. 1), ¶ 2. Defendants do not challenge this assertion.

As removal of this case was improper, the court determines that an award of just fees and costs incurred as a result of removal is warranted, pursuant to 28 U.S.C. § 1447. See *Moore v. Kaiser Foundation Hosps., Inc.,* 765 F.Supp. 1464 (N.D.Cal. 1991), *aff'd, Moore v. Permanente Medical Grp.,* 981 F.2d 443 (9th Cir.1992). Sonoma Falls is directed within fifteen days of this order to serve and file an itemized bill of fees and costs. Defendants shall have fifteen days thereafter to serve and file an opposition challenging the amount of fees and costs contained in Sonoma Falls's claim.

### VII

In sum, the court GRANTS the Tribe's motion for leave to file an amicus brief (Docs. ## 29,36,39) and GRANTS Sonoma Falls's motion to remand and for attorney's fees (Doc. # 18). This matter is hereby REMANDED to San Francisco superior court. The clerk is directed to TERMINATE all pending motions.

In connection with its attorney's fees request, Sonoma Falls may serve and file an itemized bill of fees and costs within fifteen days of entry of this order; defendants shall have fifteen days thereafter to serve and file their opposition, if any, to Sonoma Falls's attorney's fees request.

IT IS SO ORDERED.