[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 6, 2007
THOMAS K. KAHN
CLERK

No. 06-12357
Non-Argument Calendar
_____

D. C. Docket No. 04-61127-CV-JEM

SYSTEMS UNLIMITED, INC.,
a Florida corporation,

Plaintiff-Appellant,

versus

CISCO SYSTEMS, INC.,
a California corporation,
CISCO SYSTEMS CAPITAL CORPORATION,
a Nevada corporation,
CAPITAL ACQUISITION CORPORATION,
a Delaware corporation,
ASSET ACQUISITION CORPORATION,
a Delaware corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(April 6, 2007)**

Before BLACK, CARNES and MARCUS, Circuit Judges.

PER CURIAM:

Following the settlement of a dispute between Systems Unlimited, Inc. and Cisco Systems, Inc. over the ownership of certain intellectual property, Cisco agreed to covey the property to Systems. In the resulting bill of sale, Cisco:

> granted, bargained, sold, transferred and delivered, and by these presents does grant, bargain, sell, transfer and deliver unto [Systems], its successor and assigns, the following:
>
> Any and all of [Cisco]'s right, title and interest in any copyrights, patents, trademarks, trade secrets and other intellectual property of any kind associated with any software, code or data, including without limitation host controller software and billing software, whether embedded or in any other form (including without limitations, disks, CDs and magnetic tapes), and including any and all available copies thereof and any and all books and records related thereto by [Cisco] . . . .

(R1:2:Compl., Ex.A.)

Cisco never delivered any of the software to Systems. Alleging that it had been damaged by the non-delivery, Systems sued Cisco for breaching the bill of sale contract and for violating the attendant obligations to deliver the software under the Uniform Commercial Code.

On November 29, 2005, the parties filed cross-motions for summary judgment. That same day, Systems moved for leave to amend its complaint to add claims for fraud, conversion and negligence.

2

The district court denied Systems' motion for leave to amend. The court also denied Systems' motion for summary judgment, but granted Cisco's summary judgment motion. In this appeal Systems contests both the denial of its motion for leave to amend and the judgment entered for Cisco.

## I.

Systems contends that the district court abused its discretion in denying its motion for leave to amend the complaint. It argues that leave should be freely granted because it did not seek leave in bad faith or for the purpose of undue delay, and Cisco would not be prejudiced. We will reverse a district court's denial of a motion to amend only where it has clearly abused its discretion. Henson v. Columbus Bank & Trust Co., 770 F.2d 1566, 1574 (11th Cir. 1985).

Federal Rule of Civil Procedure 15(a) provides that, after a responsive pleading has been served, a party may amend its complaint only by leave of court. Fed. R. Civ. P. 15(a). The rule also provides that "leave shall be freely given when justice so requires." Id. The Supreme Court said that the "freely given" standard means:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing

3

party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

Here, the district court found that Systems had unduly delayed amending its complaint after deficiencies had been pointed out by the court. In an April 7, 2005 hearing before the district court on Systems' motion to compel, the district court said to Systems' counsel:

> It seems to me that if you want to somehow or other expand your claim to include the AMC items, that you have got to amend your pleading. You have got to, and I don't know what kind of claim you want to make; whether or not you want a claim of fraud, mutual mistake, or whatever . . . .
> [I]t may get you by a motion to dismiss, but if they never got anything, then I don't know where you are going with this, based on your pleadings and the agreements as they are right now.
> That is why I said you may have to amend, but I guess you can wait until the district court rules on the motion as to whether or not you have stated a claim.

(R4:32:34, 46.) The district court denied Cisco's motion to dismiss on August 25, 2005.

Systems' waited more than seven months after the court pointed out that its complaint was missing several causes of action, and more than three months after the motion to dismiss was denied, to amend its complaint. The motion for leave to amend was filed the day the summary judgment motions were due and two days before the discovery deadline was to lapse. Under similar circumstances, we have

4

held that the district court did not abuse its discretion in denying the motion for leave to amend.  See Maynard v. Bd. of Regents ex rel. Univ. of S. Fla., 342 F.3d 1281, 1287 (11th Cir. 2003) ("Because we conclude that Maynard has failed to show good cause for the eleventh hour amendment, we find that the district court did not abuse its discretion by enforcing its timetable for disposition of the case.").

Systems argues that it had good cause for the late amendment since Cisco withheld a crucial piece of discovery related to the fraud until only a few weeks before the summary judgment motions were due in November.  This suggestion is problematic given the district court's comments in April that Systems had a potential fraud claim.  The district court found that the facts underlying the alleged fraud were "not newly discovered but rather were known to [Systems] and have been referenced by [Systems] in previous pleadings" (R3:133:1), and Systems has not shown that this finding is clearly erroneous.

The district court also found that Cisco would be unduly prejudiced if Systems were given leave to amend its complaint because discovery was set to close and summary judgment motions had already been filed.  Adding three more causes of action to the complaint would require additional time and expense for discovery and an additional round of summary judgment motions.

Systems argues that the district court could have limited any additional

discovery to reduce expense. However, a district court has wide latitude in refereeing discovery, and we will not question the limits set by the court unless they are clearly erroneous or not rationally supported by the evidence. Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991) ("The trial court . . . has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision."). Systems has not made that showing.

Because Systems unduly delayed adding counts to its complaint and Cisco would be prejudiced by the late amendment, the district court did not clearly abuse its discretion in denying Systems' motion to amend.

## II.

Systems also contends that the district court erred in granting summary judgment in favor of Cisco because: (1) the plain language of the bill of sale required Cisco to deliver the software; (2) the bill of sale, when read in conjunction with other contemporaneous agreements, required delivery; and (3) the UCC, which governs the bill of sale, requires that all goods be delivered at a reasonable time. Systems is wrong on each point.

The bill of sale is interpreted in accord with its plain language absent some ambiguity. See Cal. Civ. Code § 1638 ("The language of a contract is to govern its

6

interpretation, if the language is clear and explicit, and does not involve an absurdity."); Whitley v. Royal Trails Prop. Owners' Ass'n, Inc., 910 So. 2d 381, 383 (Fla. 5th DCA 2005) ("The parties' intention governs contract construction and interpretation; the best evidence of intent is the contract's plain language.").[1] Here, the parties agree that the bill of sale is clear and unambiguous.

The bill of sale provides that Cisco will "grant, bargain, sell, transfer and deliver unto [Systems] . . . [a]ny and all of [Cisco]'s right, title and interest in any copyrights, patents, trademarks, trade secrets and other intellectual property of a kind associated with any software, code or data." (R1:2:Compl., Ex.A.) As the district court explained, this language unambiguously means that Cisco was required by the bill of sale to transfer to Systems all of its rights in intellectual property associated with certain software and data. There is no mention in the plain language of the contract itself of Cisco being obligated to transfer the actual software, and we will not imply any such obligation absent some good reason under law.

Systems says there are two good reasons to imply an obligation by Cisco to transfer the software. First, Systems argues that the bill of sale must be interpreted in conjunction with the settlement agreement between Systems and Cisco and other

---

[1] The district court did not decide whether the bill of sale was governed by Florida or California law, and we won't either since it doesn't matter to the outcome of the case.

documents relating to the intellectual property. These other agreements, Systems claims, include an obligation by Cisco to deliver the software with any conveyance of intellectual property.

Assuming without deciding that the other agreements include language requiring Cisco to deliver the software, they are not relevant here because Systems has never alleged Cisco violated these other agreements. Systems' complaint alleges only a violation of the bill of sale contract, and there is no obligation in that contract to deliver the software. The bill of sale does not reference or incorporate any other agreement. Cf. Williams Constr. Co. v. Standard-Pac. Corp., 61 Cal. Rptr. 912, 920 (Ct. App. 1967) ("For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." (quotation omitted)); Collins ex rel. Dixie Plywood Co. of Tampa v. Nat'l Fire Ins. Co. of Hartford, 105 So. 2d 190, 194 (Fla. 2d DCA 1958) ("Where a written contract refers to and sufficiently describes another document, that other document or so much of it as is referred to, may be regarded as a part of the contract and therefore is properly considered in its interpretation.").

To get around this point, Systems argues that "when instruments relate to the same matters, are between the same parties, and made part of substantially one transaction, they are to be taken together." (Blue Br. 22.) It is true that this is one of the canons for construing a contract under California law. See Cal. Civ. Code § 1642 ("Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."). But it is also true that this canon, as with most others, is inapplicable where the contract that is alleged to have been breached is unambiguous. Sonoma Falls Developers, LLC v. Nev. Gold & Casinos, Inc., 272 F. Supp. 2d 919, 924 (N.D. Cal. 2003) (section 1642 "is applicable only if there is ambiguity concerning the interpretation of a contract"). Here, the language of the bill of sale is unambiguous. Thus, there is no need to apply any canons of construction, including particularly section 1642.

Systems also argues that the UCC imposes a duty on Cisco to deliver the software. We will assume without deciding that Systems' reading of the UCC is correct. Even so, the provisions of the UCC only apply to contracts that deal predominately with "transactions in goods." Cal. Com. Code § 2102; Fla. Stat. § 672.102. The sale of intellectual property, which is what is involved here, is not a transaction in goods. See Lamle v. Mattel, Inc., 394 F.3d 1355, 1359 n.2 (Fed. Cir. 2005) (applying California law) ("a license for intellectual property . . . is not a sale

9

of goods"); see generally Daniel R. Cahoy, Oasis or Mirage?: Efficient Breach as a Relief to the Burden of Contractual Recapture of Patent and Copyright Limitations, 17 Harv. J.L. & Tech. 135, 163 (Fall 2003) ("intellectual property or other information cannot be a 'good' as defined by the UCC"). Thus, the UCC does not apply. Accordingly, the plain language of the bill of sale governs and, as the district court held, it does not include a provision requiring Cisco to deliver any software.

AFFIRMED.